**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| AMANDA MULHERON, | : | |
| Plaintiff, | : | No. 12-1753 (MAS) (TJB) |
| v. | : | MEMORANDUM OPINION |
| PHILADELPHIA EAGLES, et al., | : | |
| Defendants. | : | |

**SHIPP, District Judge**

This matter comes before the Court upon several motions. On March 28, 2012, Defendants Philadelphia Eagles and Lincoln Financial Field (collectively, the "Eagles") filed a Partial Motion to Dismiss, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) (the "Eagles' Motion," ECF No. 9), Plaintiff Amanda Mulheron's ("Plaintiff") Complaint (Compl., ECF No. 1-2). Plaintiff filed Opposition to the Eagles' Motion on May 14, 2012. (Pl.'s Opp'n, ECF No. 29.)

Defendants Apex Security Group, Inc. ("Apex") and Aramark Sports and Entertainment Services, LLC ("Aramark") filed Motions for Judgment on the Pleadings, pursuant to Rule 12(c), on April 4 and April 16, 2012, respectively. ("Apex's Motion," ECF No. 16; "Aramark's Motion," ECF No. 21.) Plaintiff's Opposition to those motions was filed on May 14, 2012. (ECF Nos. 29, 30.)

The Court has carefully considered the Parties' submissions and decided the matters without oral argument pursuant to Federal Rule of Civil Procedure 78. For good cause shown, the Eagles' Motion is GRANTED in part. Plaintiff, however, will be granted leave to amend the

Complaint. As explained more fully below, Apex and Aramark's Motions are administratively terminated in light of the leave to amend granted to Plaintiff.

I.   **Background**

This is a diversity personal injury case filed by Plaintiff. She was injured during a Philadelphia Eagles game she attended on December 2, 2010. (Pl.'s Compl. ¶ 7, ECF No. 1-1.) During that game, a fight broke out in which Plaintiff played no role. (*Id.* ¶ 8.) The combatants (the above named fictional defendants), tumbled down upon Plaintiff and allegedly caused Plaintiff serious injuries. (*Id.* ¶ 10.) Plaintiff states that she incurred expenses "for hospital and medical attention" and "suffered lost wages and other economic losses." (*Id.*) Plaintiff further alleges that she is "prevented from attending to her usual affairs and occupation and has suffered and will in the future, suffer pain, permanent disability and loss of quality of life." (*Id.*) She seeks "compensatory and punitive damages, interest and costs of suit." (*Id.*)[1]

This matter was filed by Plaintiff in the Superior Court of New Jersey, Law Division, Mercer County, on February 10, 2012. (ECF. No. 1-2.) A notice of removal was filed by Apex on March 21, 2012. (ECF No. 1.) The amount in dispute exceeds $75,000 and there is complete diversity between the Plaintiff and the named Defendants: the Eagles and Aramark are citizens of Pennsylvania; Apex is a citizen of California.

A.   **Plaintiff's Complaint**

Plaintiff's Complaint contains six claims. The first claim alleges that the Eagles, Apex, Aramark and John Doe are *vicariously liable* for the actions of their patrons and the injuries

---

[1] On October 7, 2011, Plaintiff sought $100,000 from an insurance adjuster, assumedly under a claim filed against the Eagles, in order to avoid this suit. (ECF No. 1-4, p. 2-3). This information was provided as part of Apex's Notice of Removal in order to prove that the damages in this case exceeded $75,000, per 28 U.S.C. § 1332.

2

caused by the combatants to Plaintiff. This claim will be referred to as "Plaintiff's Vicarious Liability Claim."

Plaintiff's second claim names the Eagles, Apex, Aramark, John Doe and ABC and is based upon a theory of *breach of an express or implied warranty*. The claim also alleges that Defendants, and/or their employees, servants or agents, were (a) negligent, and/or (b) created and maintained a nuisance, and/or (c) breached their warranties. The second claim further alleges that the negligence in part (a) was caused by a failure to provide adequate supervision and security, a failure to provide a safe environment for patrons, and that Defendants were otherwise careless and negligent. This claim will be referred to as "Plaintiff's Breach of Express or Implied Warranty Claim."

Plaintiff's third claim names the Eagles, Apex, Aramark, John Doe, ABC, Richard Roe and Jane Doe and is virtually the same as the second, except it largely omits any mention of "express or implied warranties."[2] It includes the same (a) negligence, (b), nuisance, and (c) breach of warranty language. It also includes the same three allegations about the manner in which Defendants were negligent: 1) failure to provide adequate supervision and security, 2) failure to provide a safe environment for patrons, and 3) that Defendants were otherwise careless and negligent. For sake of clarity throughout this opinion, this claim will be referred to as "Plaintiff's Negligence Claim."

Plaintiff's fourth claim names the Eagles, Apex, Aramark, John Doe, and ABC and is based upon negligent hiring, training and supervision of Defendants' respective employees. This claim will be referred to as "Plaintiff's Negligent Supervision Claim."

---

[2] The claim does mention that the Defendants "breached their warranties as a result of which the plaintiff was caused to suffer injuries."

Plaintiff's fifth claim names the Eagles, Aramark, John Doe, and ABC and is based upon purported violations of the Pennsylvania Dram Shop Act, 47 P.S. § 4-493. This is the only claim in which one of the named Defendants—APEX—is not included in the claim. The claim alleges that the Eagles and Aramark "served, sold, or gave alcoholic beverages to defendants, Richard Roe and Jane Doe . . . while they were visibly intoxicated," after which Richard Roe and Jane Doe "began fighting, pushing, rumbling, and were careless, negligent and grossly negligent and fell on Plaintiff Amanda Mulheron, causing her serious injuries." This claim will be referred to as "Plaintiff's Dram Shop Claim."

Plaintiff's sixth and final claim names Richard Roe and Jane Doe and alleges that they were reckless and grossly negligent when they fell on her during their altercation, in which Plaintiff was not involved. This claim will be referred to as "Plaintiff's Unnamed Defendant Reckless and Gross Negligence Claim."

All six of the claims seek judgment against Defendants "jointly, individually and in the alternative . . . for interest, compensatory and punitive damages and costs of suit."

**B.   Procedural History**

Apex filed an Answer to Plaintiff's Complaint on March 28, 2012. (ECF No. 11.) It includes cross claims against the other defendants. Those claims seek contribution and common law indemnification. They will not be addressed in this Opinion because no motions have been filed regarding them. Also on March 28, 2012, the Eagles filed a motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6).

On April 2, 2012, Aramark filed an Answer to Plaintiff's Complaint. (ECF No. 13.) Similar to Apex's pleading, Aramark's Answer also contained cross claims. Those cross claims

seek contribution and complete indemnification from Apex only. They will also not be addressed in this opinion because no motions have been filed regarding them.[3]

On April 4, 2012, Apex filed a motion for judgment on the pleadings pursuant to Rule 12(c) seeking to dismiss Plaintiff's complaint in its entirety. On April 16, 2012, Aramark filed a motion for judgment on the pleadings pursuant to Rule 12(c) seeking to dismiss Plaintiff's complaint in its entirety.

On April 23, 2012, the Eagles filed responses to both Apex and Aramark's motions for judgment on the pleadings stating that the motions for judgment on the pleadings were not yet ripe for adjudication because the pleadings in the case had not yet closed. (ECF Nos. 24, 25.) The Eagles have yet to file an Answer to Plaintiff's Complaint due to their pending motion to dismiss.

On May 1, 2012, Apex filed a reply to the Eagles' opposition to their motion on the pleadings. (ECF No. 28.) That reply contends that the motion is ripe for adjudication because the pleadings can be considered closed.

On May 14, 2012, Plaintiff filed opposition to the Eagles' motion to dismiss. The opposition addresses the substance of the Eagles' motion. Plaintiff, also on that same date, filed opposition to Apex and Aramark's motions for judgment on the pleadings stating that the motions were not yet ripe for adjudication because the pleadings in the case had not yet closed. Plaintiff requested that the motions be denied without prejudice with instructions to Apex and Aramark to refile the motions once the pleadings were closed. There was no substantive response to the motions for judgment on the pleadings.

On May 16, 2012, and May 21, 2012, Apex and Aramark, respectively, filed replies to Plaintiff's opposition to their motions for judgment on the pleadings. (ECF Nos. 31, 32.) Both

---

[3] On April 5, 2012, the Eagles filed an Answer to Apex's cross claims. On April 23, 2012, Aramark and Apex's both filed Answers to each other's cross claims.

contend that the motion should be heard by the Court because the pleadings should be considered closed and that Plaintiff would not be prejudiced by such action.

## II. Analysis

### A. Apex and Aramark's Motions for Judgment on the Pleadings

Rule 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c); *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). The standard governing a Rule 12(c) motion is the same standard governing motions to dismiss under Rule 12(b)(6). *Allah v. Hayman*, No. 11-2460, 2011 U.S. App. LEXIS 17860, at *8 (3d Cir. Aug. 25, 2011); *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).

Plaintiff opposes Apex and Aramark's motions on purely procedural grounds.[4] Plaintiff states that "the Court may not entertain Defendant's [sic] Apex and Aramark's Motion[s] for Partial Judgment on the Pleadings because the pleadings in the case are not yet closed . . . ." (Pl.'s Opp'n Br. 1, ECF No. 30). Plaintiff points to the text of Rule 12(c) itself, which states that a motion based thereon may not be filed until "[a]fter the pleadings have closed."

Plaintiff further relies on *Fiduciary & Deposit Co. of Maryland v. Lutheran Home at Moorestown, Inc.*, No. 09-0625, 2010 WL 715346 (D.N.J. Feb. 24, 2010). The *Lutheran* court, noting a split in authority regarding when the pleadings should be considered closed for purposes of filing a 12(c) motion, declined to entertain a defendants' motion under 12(c) while another

---

[4] The Eagles have submitted opposition to the motions as well. That opposition is based upon the same rationale as Plaintiff. Because the Eagles' position mirrors Plaintiff's, the Eagles' opposition to the motions will not be addressed.

defendant had a previously filed motion to dismiss pending, stating that "the most prudent course is to deny the motion without prejudice, allowing [the defendant who had filed the motion for judgment on the pleadings] to refile once the pleading stage of this litigation is entirely concluded." *Id.*

The Court agrees with Plaintiff that disposition of Apex and Aramark's Motions at this juncture is untimely and chooses to follow *Lutheran*. As explained more fully below, disposition of the Eagles' Motion will affect the composition of the Plaintiff's complaint in a significant way as to *all* of the parties, including Apex and Aramark. Moreover, a substantive response to Apex and Aramark's Motions was not filed by Plaintiff due to a good faith belief that such Motions were procedurally improper. In light of these factors and considerations, the Apex and Aramark Motions are administratively terminated. Leave to refile updated motions is granted. Updated motions shall be filed, if Apex and Aramark desire, once Plaintiff's time to file an amended pleading has expired.

### B. The Eagles' Partial Rule 12(b)(6) Motion to Dismiss

The Eagles seek to dismiss certain aspects of Plaintiff's complaint. First, the Eagles seek dismissal of Plaintiff's request for punitive damages in all six of Plaintiff's claims as legally barred—under both New Jersey and Pennsylvania Law—and not supported by the facts in the Complaint. Second, and specific to claims four and five, Plaintiff's Negligent Supervision and Dram Shop Claims, the Eagles contend that they cannot be held liable for the alleged punitive conduct of another party (the other defendants). Third, the Eagles seek dismissal of Plaintiff's first claim because the Eagles cannot be held vicariously liable for the actions of its patrons. Fourth, the Eagles contend that Plaintiff's fifth claim—under Pennsylvania's Dram Shop Act—is barred because Plaintiff failed to plead that the Eagles are a licensee under the Act.

1) **Standard of Review**

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Determining plausibility is a "context-specific task which requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 545). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

2) **Choice of Law Analysis**

This is a diversity case filed in New Jersey, therefore, New Jersey's choice of law provisions apply. *Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006). Under New Jersey's

"flexible governmental-interest approach to resolving choice of law questions," the main inquiry is which state has the "greatest interest in resolving the particular issue" presented to the court. *Id.* (citing *Gantes v. Kason Corp.*, 145 N.J. 478, 484 (N.J. 1996)). The governmental interest test has two prongs.

First, the court must determine if there is any conflict between the law of the situs and the law of the venue state. If there is no conflict, then the law of the venue state applies and there is no need to engage in the choice of law analysis. *Lebegern*, 471 F.3d at 428 (citing *Curtis T. Bedwell & Sons, Inc. v. Geppert Bros., Inc.*, 280 N.J. Super. 391, 395 (N.J. Super. Ct. App. Div. 1995) (explaining that there is no need for a choice of law analysis when there is no conflict between the situs and the venue)).

If there is a conflict, the second prong of the governmental interest test must be applied. The second prong requires an assessment of "the interests each state has in applying its own law and [a determination of] which state has the most significant relationship to the parties and the event." *Lebegern*, 471 F.3d at 428 (citing *Fu v. Fu*, 160 N.J. 108, 119 (N.J. 1999)). Five factors are considered in the second prong: "(1) interstate comity, (2) the interests of the parties, (3) the interests underlying the substantive body of law, (4) the interests of judicial administration, and (5) the competing interests of the states." *Id.* (citing *Fu*, 160 N.J. at 122). The fifth factor is paramount. *Id.* at 429 (citing *Erny v. Estate of Merola*, 171 N.J. 86, 101 (N.J. 2002)). As part of that analysis, there is a presumption that the law of the state where the alleged tort occurred, the situs state, should have its law apply. *Id.* at 428. In this case, therefore, Pennsylvania law will presumptively be applied unless significant interests of New Jersey override that presumption and Pennsylvania law will not be frustrated by such subordination.

Specific to tort cases, four additional "contacts" should be considered: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered." *Id.* (citing *Fu*, 160 N.J. at 125). Most important to this case, if the underlying action is a personal injury case,

> the place of the injury is important, and when both the conduct and the injury occur in the same place, that jurisdiction's law generally will apply except in those rare instances where another jurisdiction has a demonstrably dominant interest and no policy of the situs state is frustrated by application of the sister state's policy.

*Lebegern*, 471 F.3d at 429 (quoting *Erny*, 171 N.J. at 103). This further strengthens the presumption that Pennsylvania law should apply. The choice of law analysis will be applied for each legal issue raised by the Eagles.

### 3) Plaintiff's Vicarious Liability Claim

Plaintiff's Vicarious Liability Claim seeks to hold Defendants, including the Eagles, "vicariously liable for the actions of their patrons." The Eagles argue that Plaintiff's legal theory is unsound and unsupported by any case law. The Court agrees. Moreover, the claim will be dismissed as to all Defendants because the claim is similarly flawed against all of them. *See Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) ("Court may grant motion to dismiss even as to nonmoving defendants where nonmoving defendants are in position similar to that of moving defendants or where claims against all defendants are integrally related.").

Under both New Jersey and Pennsylvania law—as well as American common law jurisprudence—vicarious liability requires some level of agency or employment relationship. *See generally Davis v. Devereux Found.*, 209 N.J. 269, 287 (2012); *Aiello v. Ed Saxe Real Estate, Inc.*, 508 Pa. 553, 559 (1985); The Restatement (Third) Of Agency § 1.01 (2006). The Restatement defines the "elements of agency" as "posit[ing] a consensual relationship in which one person, to

one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person." The Restatement (Third) of Agency § 1.01 cmt. c (2006). Some examples of when an agency relationship arises are "employer and employee, corporation and officer, client and lawyer, and partnership and general partner." *Id.* No such relationship has been alleged in this case. As such, Plaintiff's Vicarious Liability Claim will be dismissed with prejudice as to all the named Defendants.[5]

### 4) Plaintiff's Request for Punitive Damages

The Eagles assert that—under either New Jersey or Pennsylvania law—Plaintiff's request for punitive damages included in all of her claims should be dismissed because they are legally barred. Under Pennsylvania law, punitive damages cannot be awarded unless Plaintiff can prove that the Eagles' "actions [were] of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct" and that it would be appropriate to punish the Eagles for such action. *SHV Coal, Inc. v. Cont'l Grain Co.*, 526 Pa. 489, 493 (Pa. 1991). Punitive damages must be proven by a preponderance of the evidence. *Kline v. Sec. Guards, Inc.*, 159 F. Supp. 2d 848, 855 (E.D. Pa. 2001) (citing *Sprague v. Walter*, 441 Pa. Super. 1, 67 (Pa. Super. Ct. 1995)).

Under New Jersey law, Plaintiff must prove, by clear and convincing evidence, that the Eagles' actions or omissions "were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5.12(a). Negligence, or even gross negligence, will not suffice. *Id.*

---

[5] Plaintiff's argument confuses the legal concepts of premises liability and vicarious liability, which as noted above, requires an agency relationship. While it is hornbook law that a landowner can be liable under certain circumstances for the torts committed by a third-party upon another third-party while on the landowner's property, that liability flows from a different concept. Plaintiff has failed to provide any cases which state that a landowner is *vicariously* liable for the torts of its *patrons*.

While the general standard of culpability of the two states is similar, the burden of proof is not. This means that the laws of the two states conflict and the choice of law analysis will need to be applied. As noted earlier, there is a strong presumption in personal injury cases that, under the governmental-interest test, the law of the situs state should apply. *Lebegern*, 471 F.3d at 429 (quoting *Erny*, 171 N.J. at 103). That presumption may only be overcome "in those rare instances where another jurisdiction has a demonstrably dominant interest and no policy of the situs state is frustrated by application of the sister state's policy." *Id.* That is not the case here.

Pennsylvania has a clear preference for a lower standard of proof regarding punitive damages. Its legislature, unlike the New Jersey legislature, has not sought to raise the burden of proof or otherwise interject into the common law therein. While New Jersey has made clear that it has a policy interest in the case, Pennsylvania's policy for a lower standard would clearly be frustrated by this court adopting New Jersey's rules regarding punitive damages.

As such, the key inquiry is whether the facts in Plaintiff's complaint, taken as true for purposes of this motion, support a finding that Plaintiff's allegation that she is entitled to punitive damages is *plausible* under Pennsylvania law. Plaintiff is correct to note that she need not plead her claim with particularity. (Pl.'s Opp'n Br. 6, ECF No. 29.) That does not mean, however, that she need not plead any facts which will support her claim for punitive damages. As noted earlier, Plaintiff will eventually need to prove—and at a minimum at this point must allege—that the Eagles "actions [were] of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct." *SHV Coal*, 526 Pa. at 493.

Here, Plaintiff has failed to plead facts which could plausibly lead to a successful action for punitive damages. There is simply nothing in the facts of the Complaint regarding Plaintiff's Breach of Express or Implied Warranty Claim, Negligence Claim, and Negligent Supervision

Claim, which indicates or alleges that the Eagles were *intentional, willful, wanton or reckless*. Those claims simply fail to allege any facts which would support a finding that the Eagles were engaged in conduct based upon an "evil motive or [] reckless indifference to the rights of others." *SHV Coal*, 526 Pa. at 493 (quoting Restatement (Second) of Torts § 908 (1979)). The portions of the claims that seek punitive damages are stricken without prejudice as to all defendants. *See Bonny, supra.* Leave to amend is granted so that Plaintiff may plead facts which support a finding that punitive damages exist. Until then, Plaintiff's request for punitive damages in her Breach of Express or Implied Warranty Claim, Negligence Claim, and Negligent Supervision Claim are dismissed without prejudice.

### 5) Plaintiff's Dram Shop Claim

The Eagles contend that they cannot be held liable under Pennsylvania's Dram Shop Act because Plaintiff has failed to plead that the Eagles are a licensee under the act. (Eagles' Br. 12, ECF No. 9-2.) Plaintiff argues that under 47 P.S. § 4-493(11), the Eagles should be considered a licensee. (Pl.'s Br. 11, ECF No. 29.) That dispute is of no consequence as the Court has a more fundamental concern regarding Plaintiff's Dram Shop Claim.

In order to sustain a claim under Pennsylvania's Dram Shop Act, a Plaintiff must prove that the licensee served a third party who was "visibly intoxicated." 47 Pa. Stat. Ann. § 4-497. In this case, Plaintiff alleges that the Eagles "served, sold, or gave alcoholic beverages" to the unnamed defendants "while they were visibly intoxicated, in violation of the Pennsylvania Dram Shop Act . . . ." (Pl.'s Compl., ECF No. 1-1.) That allegation treads on the wrong side of *Twombly* and *Iqbal*. The Court finds that statement to be a conclusory allegation, primarily of a legal nature, which is otherwise unsupported by any other facts in the complaint. That claim, alone, constitutes nothing more than a "threadbare [recitation] of a cause of action's elements, supported by mere

conclusory statements." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555). "Visibly intoxicated" has a legal significance under the Dram Shop Act. *See* 47 Pa. Stat. Ann. § 4-497. Plaintiff used it for a reason. The facts of the complaint, however, do not indicate any basis for that legal conclusion. Rule 8(a) requires more. As such, the Court dismisses Plaintiff's Dram Shop Claim without prejudice as to both the Eagles and Aramark, the only two named Defendants named in that claim. Leave to amend this claim is granted.

As a final note regarding Plaintiff's Dram Shop Claim, the Eagles also moved to have the request for punitive damages in that claim stricken. Decision on that issue will be withheld until Plaintiff's amended complaint, should she choose to submit one, is received. Only at that point will the court be able to discern whether there are sufficient facts alleged which might underpin a claim for punitive damages. *See Tuski v. Ivyland Cafe*, 4436 FEB. TERM 2002, 2004 WL 4962363, at *14-15 (Pa. Com. Pl. Dec. 22, 2004) (awarding punitive damages in a Dram Shop Act case).[6] At this point in time, however, Plaintiff's Dram Shop Claim, including its request for punitive damages, is dismissed without prejudice.

### III. Procedural Schedule as a Result of this Opinion

Three motions were before the Court. As explained above, Plaintiff's Vicarious Liability Claim is dismissed with prejudice as to all defendants. Plaintiff's request for punitive damages contained in her Breach of Express or Implied Warranty Claim, Negligence Claim, and Negligent Supervision Claim are dismissed without prejudice as to all of the named Defendants. Leave to amend has been granted. Plaintiff's Dram Shop Act Claim is dismissed without prejudice as to the Eagles and Aramark. Leave to amend that claim has also been granted.

---

[6] Plaintiff requested leave to amend if the Court found that Plaintiff would have been required to allege that the Eagles were a licensee under the Pennsylvania Dram Shop Act. The Court has declined to decide that issue. The Court will, however, grant leave to amend the Dram Shop Claim under Rule 15(d).

Plaintiff is granted leave to amend her Complaint pursuant to this Opinion within thirty (30) days. The Eagles are instructed to submit an answer, or renewed motion to dismiss, within twenty-one (21) days of the filing of any amended complaint. Based on the anticipated pleading, Apex and Aramark's current motions for judgment on the pleadings are administratively terminated. Apex and Aramark will have twenty-one (21) days from the filing of Plaintiff's amended complaint to file a responsive pleading.

If Plaintiff fails to file an amended complaint within thirty (30) days, Apex and Aramark shall file updated and renewed motions for judgment on the pleading addressing the claims which remain following this Opinion and accompanying Order. Plaintiff shall respond to such motions pursuant to the normal motion calendar.

### IV. Conclusion

For the reasons stated above, Apex and Aramark's Rule 12(c) Motions are administratively terminated. Plaintiff's Vicarious Liability Claim is DISMISSED WITH PREJUDICE as to all of the named Defendants. Plaintiff's request for punitive damages associated with her Breach of Express or Implied Warranty Claim, Negligence Claim, and Negligent Supervision Claim are STRICKEN WITHOUT PREJUDICE as to all of the named Defendants. Plaintiff's Dram Shop Claim is hereby DISMISSED WITHOUT PREJUDICE as to the Eagles and Aramark. Plaintiff is GRANTED LEAVE to file an amended complaint in conformance with the above instructions within thirty (30) days of the filing of this Opinion and accompanying Order. Responses to an amended complaint, if filed, are due within twenty-one (21) days of the filing of the amended complaint.

Dated: January 18, 2013

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE